UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00053-JAW |
| | ) | |
| KEVIN EARL SPRING | ) | |

**ORDER ON MOTIONS TO DISMISS**

The Court concludes that the Defendant's due process argument may not be reached in a motion to dismiss the indictment because it depends upon the resolution of facts that must be decided by a jury. The Court further concludes that the Government has not violated the Speedy Trial Act's thirty-day provision between arrest and indictment and that charges brought under 18 U.S.C. § 922(a)(6) and § 924(a)(1)(A) are not multiplicitous.

**I.   STATEMENT OF FACTS**

On April 13, 2011, a federal grand jury indicted Kevin Earl Spring for making a false statement in connection with the acquisition of a firearm, an alleged violation of 18 U.S.C. § 922(a)(6). *Indictment* (Docket # 38).  On May 18, 2011, a federal grand jury issued a superseding indictment, adding two counts to the April 13, 2011 indictment: Count II, making a false statement in connection with the purchase of a firearm, a violation of 18 U.S.C. § 924(a)(1), and Count III, possession of a firearm by a person previously committed to a mental institution, a violation of 18 U.S.C. § 922(g)(4).  On June 14, 2011, Mr. Spring moved to dismiss the indictment based on due process, speedy trial, and multiplicity grounds. *Def.'s Mot.*

*to Dismiss the Superseding Indictment* (Docket # 76) (*Due Process Mot.*); *Def.'s Mot. to Dismiss Count III of the Superseding Indictment for Speedy Trial Violation and to Dismiss Count II as Being Multiplicious* (Docket # 77) (*Speedy Trial and Multiplicity Mot.*).

A. **Due Process Motion**

1. **Kevin Earl Spring's Contentions**

To his motion, Mr. Spring attached a discharge summary from an emergency admission to Penobscot Bay Medical Center (PenBay). *Due Process Mot.* Attach. 1 at 1, Penobscot Bay Medical Center Discharge Summary (Docket # 76) (*Discharge Summary*). According to the discharge summary, on December 29, 2010, Mr. Spring called the police to his home in Owls Head, Maine, claiming he was sure he had heard "footsteps" and "whisperings of a couple of kids who had worked for him in his basement," and he thought they were stealing from him. *Discharge Summary* at 1. He explained that "those kids may be doing this for retribution." *Id.* The police thought he might be "delusional and hallucinating" and brought him to Penobscot Bay Hospital where he was kept until January 4, 2011. *Id.* Mr. Spring refused all psychotropic medication and was given psychotherapy and milieu therapy. *Id.* The discharge summary states that during his hospital stay, he evidenced no "paranoia or delusions, hallucinations, suicidality, or homicidality, though he appeared somewhat odd and eccentric at times." *Id.* at 2. His mental status at discharge was "alert, oriented, cooperative, pleasant, and polite, in no distress without signs of intoxication or withdrawal." *Id.* The discharge summary

concluded that "[t]he patient was not judged suicidal, homicidal, psychotic or dangerous to himself or others at the time of discharge. There was no imminent danger." *Id.*

Mr. Spring says that there is a legal difference between an emergency admission to a hospital and a commitment. *Due Process Mot.* at 2-3. While acknowledging that the First Circuit has concluded that Maine's "blue paper" emergency admission process constitutes a commitment, Mr. Spring contends that the concept of commitment should not be extended to a temporary detention because it deprives a person of a constitutional right without due process of law. *Id.* at 3. Further, it categorizes all persons who have been subject to an emergency admission as dangerous, which in Mr. Spring's view is an overly broad statutory category that does not withstand intermediate scrutiny. *Id.*

Mr. Spring also asserts that "[o]n January 27, 2011, Mr. Spring went to [Willey's] Sports Center in Ellsworth, Maine, where he discussed the purchase of a Glock pistol. Mr. Spring handled the pistol he selected, paid the purchase price and filled out the ATF Form 4473. In block 11(f) of that [form] Mr. Spring gave a negative answer to the question asking whether he had ever been committed to a mental institution." *Id.* at 4.

Based on these facts, Mr. Spring contends that despite the First Circuit case of *United States v. Chamberlain*, 159 F.3d 656 (1st Cir. 1998), the blue paper process in Maine "does not provide the procedures needed to comply with the due process clause." *Due Process Mot.* at 10. He also urges the Court to reexamine

3

*Chamberlain* in view of the United States Supreme Court's 2008 decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) in which the Court interpreted the Second Amendment as conferring an individual right to keep and bear arms. *Due Process Mot.* at 10-11.

      **2.**      **The Government's Response**

In its response, the Government posits a number of facts that were not included in Mr. Spring's motion. *Resp. of the United States to Def.'s Mot. to Dismiss the Superseding Indictment* (Docket # 83) (*Gov't's Due Process Resp.*). It attached documents that reveal that a crisis clinician completed and signed an application for emergency committal or what the state of Maine refers to as a "blue paper." *Id.* Attach. 1, Application for Emergency Involuntary Admission to a Mental Hospital (Docket # 83). It indicates that a physician certified Mr. Spring as mentally ill and posing a risk of serious harm and that a judicial officer authorized placing him in custody and transporting him to the psychiatric unit at PenBay. *Id.* The Government contends that this procedure has withstood legal attack. *Gov't's Due Process Resp.* at 4-19.

    **B.**    **Speedy Trial and Multiplicity Motion**

      **1.**      **The Defendant's Contentions**

Mr. Spring's speedy trial and multiplicity motion recites the complete history of this case, tracing the initiation of the first charge to a February 16, 2011 sealed criminal complaint. *Speedy Trial and Multiplicity Mot.* at 2 (citing *Compl.* (Docket # 1)). The complaint alleged that Mr. Spring had purchased a Glock pistol on

4

January 27, 2011 after having previously been committed to PenBay, and therefore had possessed a firearm in violation of 18 U.S.C. § 922(g)(4). *Compl.* at 1. Mr. Spring was arrested on a warrant on February 23, 2011 in the commonwealth of Massachusetts and he came into the custody of the United States Marshal for the District of Maine on March 10, 2011. *Speedy Trial and Multiplicity Mot.* at 2. The Court held an initial appearance on March 15, 2011 and at that hearing, counsel jointly agreed to a thirty-day tolling of the speedy trial clock regarding the time to indictment, an agreement that was reduced to a court order on March 17, 2011, excluding the period from March 15, 2011 through April 14, 2011 from speedy trial clock calculations. *Id.*

On April 13, 2011, a federal grand jury indicted Mr. Spring for making a false statement in connection with the purchase of a firearm at Willey's Sports Center on January 27, 2011, an alleged violation of 18 U.S.C. § 922(a)(6); unlike the criminal complaint, the indictment did not charge him with unlawful possession. *Id.* at 2-3. The speedy trial clock began to run on April 15, 2011. *Id.* at 4. Mr. Spring was arraigned on April 29, 2011. *Id.* On May 5, 2011, the Government moved for trial witness subpoenas, access to documents needed to prepare for trial, and permission for potential trial witnesses to discuss protected health information with government investigators. *Id.* On May 12, 2011, defense counsel requested additional time to prepare pretrial motions and on the same day, the Court issued a Speedy Trial Order, granting the motion and excluding the period from May 13, 2011 through May 27, 2011 from speedy trial act calculations. *Id.* On May 18,

2011, a grand jury issued a superseding indictment, adding Counts II and III, as earlier noted. *Id.* Mr. Spring moves to dismiss Count III of the superseding indictment on the ground that the speedy trial clock has run because the Government's May 5, 2011 motion related only to trial and did not toll the thirty-day clock. *Id.* Including the time from the May 5, 2011 motion, Mr. Spring says that the thirty-day indictment clock window has lapsed. *Id.*

Mr. Spring also seeks the dismissal of Count II of the superseding indictment on the ground that Count I is "exactly the same transaction and contains exactly the same elements as Count I." *Id.*

### 2. The Government's Response

The Government runs through a separate set of speedy trial calculations and concludes that the "grand jury returned its initial indictment on April 13, 2011, a day before expiration of the period of exclusion." *Resp. of United States to Def.'s Mot. to Dismiss Count III of the Superseding Indictment for Speedy Trial Violation and to Dismiss Count II as Being Multiplicitous* at 4 (Docket # 84) (*Gov't's Speedy Trial and Multiplicity Resp.*).

Turning to the multiplicity issue, the Government says that although the two counts are similar, they contain different elements: to prove a violation of § 922(a)(6), the Government must prove that a defendant's "statement was intended to, or likely to, deceive the firearms dealer about a fact 'material' to the lawfulness of the sale" and to prove a violation of § 924(a)(1)(A), the Government must prove that a defendant's statement was "made with respect to information that the law

6

requires a federally licensed firearms dealer to keep." *Id.* at 7. In other words, unlike § 922(a)(6), § 924(a)(1)(A) contains no materiality element. *Id.* The Government quotes from an Eleventh Circuit case, *United States v. Hawkins*, 794 F.2d 589 (11th Cir. 1986), which concludes that the two statutory provisions charge different crimes.

### 3. Defendant's Reply

Mr. Spring replied only to the Government's arguments on the Speedy Trial Act calculations. *Def.'s Reply Mem. – Mot. to Dismiss Count III of the Superseding Indictment for Speedy Trial Violation and to Dismiss Count II as Being Multiplicious* (Docket # 85) (*Def.'s Reply*). In his Reply, Mr. Spring says that the Government identified "the incorrect speedy trial timeframe," noting that the ending point is not the filing of the original indictment, but the filing of the superseding indictment. *Id.* at 1. Mr. Spring points out that the original complaint contained the charge of possession of a firearm by a person previously committed to a mental institution, the original indictment did not, and the superseding indictment did.[1] *Id.* He claims the speedy trial analysis must run from February 23, 2011, the date of his arrest, until May 18, 2011, the date of the superseding indictment. *Id.* at 1-2. Using the Government's own calculations, he says that the period from April 15, 2011 through May 4, 2011 is countable time—a total of 20 days. *Id.* at 2. He argues that this leaves the one decisive question—"whether the

---

[1] The Defendant's Reply actually refers to the charge of possession of a firearm by a felon, but the Court assumes this was a mistake. *Def.'s Reply* at 1. There is no other suggestion that Mr. Spring is a felon.

7

filing of a 'pretrial motion' tolls the running of the speedy indictment clock or merely the speedy trial clock." *Id.*

## II. DISCUSSION

### A. Legal Standards for a Motion to Dismiss

By returning an indictment, a grand jury is carrying out a constitutional function contemplated in the Bill of Rights. U.S. CONST. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). Unlike civil actions, an indictment is not generally subject to dispositive motion practice. "[D]ismissing an indictment is an extraordinary step." *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir. 1997)). In *Whitehouse v. United States District Court*, the First Circuit observed that "[w]hen a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).

In this case, as a predicate for each Count, the superseding indictment alleges that Mr. Spring had been "committed to a mental institution." *Superseding Indictment* at 1-3. There is nothing on the face of the indictment that suggests he was not so committed. In his attempt to dismiss the superseding indictment, Mr. Spring attached a copy of the discharge summary from his hospital stay and argues

8

that as a matter of law, the hospital record does not reveal facts sufficient to constitute a "commitment." *Due Process Mot.* at 4-10.

In essence, Mr. Spring's motion attempts to test the sufficiency of an indictment by testing the sufficiency of the evidence to support the indictment. This procedure is unknown in criminal law. Unlike a complaint initiating a civil action, "an indictment is not generally subject to dispositive motion practice." *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009); *see also Li*, 206 F.3d at 62. Thus, this Court's supervisory power over indictments should be reserved "for extremely limited circumstances." *Whitehouse*, 53 F.3d at 1360; *see also United States v. Morrison*, 449 U.S. 361, 365 (1981) (concluding that the dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced defendant's case); *Li*, 206 F.3d at 62 (declining to dismiss an indictment based on an asserted violation of the Vienna Convention).

Although framed as a motion to dismiss the indictment, Mr. Spring really has no quarrel with the sufficiency of the indictment. For example, he does not claim it fails to allege an essential element of the offense nor does he assert a jurisdictional flaw. Instead, he posits evidence he claims the Government would offer at trial to support its case that a "commitment" took place and evidence he claims he would offer at trial to support his due process defense, and he seeks to have the indictment dismissed on that basis. In response, the Government posits evidence that it says it would present at trial to demonstrate that Mr. Spring was, in fact, committed.

This procedure—by both the Defendant and the Government—is contrary to law. As Charles Alan Wright and Andrew D. Leipold explain:

> If a pretrial motion attacks the sufficiency of the indictment or information, the allegations of the pleading must be taken as true. Although Rule 47 permits affidavits in support of motions, neither it nor Rule 12 was intended to permit "speaking motions," that is, motions that require consideration of facts outside the pleadings. Were the rule otherwise, the truth of the allegations could be challenged by affidavit, and the pretrial motion could be turned into a trial of the general issue. This is not to say, of course, that courts may not consider and resolve fact questions when ruling on motions prior to trial, it just may not resolve matters that constitutionally must be decided by a jury.

1A CHARLES ALAN WRIGHT & ANDREW D. LEIPOLD, FEDERAL PRACTICE AND PROCEDURE § 194 (4th ed. 2008). For example, a court may resolve pre-trial matters such as motions to suppress, discovery disputes, and joinder issues. *Id.* at § 194 n.7; FED. R. CRIM. P. 12, Advisory Comm. Notes (1944) (listing motions that must and may be raised pretrial). Here, however, Mr. Spring asks the Court to dismiss an indictment based on facts that run to the quality of the Government's proof and to facts essential to his defense, but only a jury can evaluate the persuasiveness of evidence. *See* U.S. CONST. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"); FED. R. CRIM. P. 12(b)(2) ("A party may raise by pretrial motion any defense, objection, or request <u>that the court can determine without a trial of the general issue</u>") (emphasis supplied).

Thus, if this case were to proceed to trial, the Government would be required to establish that Mr. Spring had in fact been "committed to a mental institution," an

element the superseding indictment alleges in Counts One through Three. In his Model Jury Instructions, Judge Hornby defines "involuntary commitment":

> An "involuntary commitment" occurs when a state judge, pursuant to an application for involuntary admission to a mental hospital, authorizes a law enforcement officer to take a person into custody and transport him to a hospital.

Judge D. Brock Hornby's 2011 Revisions to Pattern Criminal Jury Instructions for the Dist. Cts. § 4.18.922(g) (updated Feb. 20, 2007); *see also id. Comment 9 and cases cited therein*. Whether the Government produces sufficient evidence to satisfy this legal standard cannot be a matter for dispositive ruling. Of course, during trial, upon motion, the Court may be required to rule on the legal sufficiency of the Government's evidence on this and other elements of the charges. If the Government fails to convince the jury that Mr. Spring was involuntarily committed within the meaning of this definition, he will be acquitted, and if he is convicted, the Court may be required—again upon motion—to determine the legal sufficiency of the evidence. However, what Mr. Spring is seeking is more in the nature of a motion for summary judgment, proffering his version of the evidence and maintaining that it is insufficient to meet the legal standard. To the extent that the Court may reach the issues he is attempting to raise, it may do so only upon "a trial of the general issue." FED. R. CRIM. P. 12(b)(2).

### B. Speedy Trial

Mr. Spring's second ground for dismissal, which is limited to Count III of the superseding indictment, is an asserted violation of the Speedy Trial Act. Mr. Spring is correct that if the complaint that resulted in the defendant's arrest contains a

11

charge not contained in the original indictment but added in a superseding indictment, which is not filed within thirty days of the original complaint, the charge is subject to dismissal. *United States v. Davis*, 721 F. Supp. 2d 59, 60 (D. Me. 2010) (citing 18 U.S.C. §§ 3161(b), 3162(a)(1)).

Here, the February 18, 2011 criminal complaint contained a single count, an alleged violation of 18 U.S.C. § 922(g)(4), knowing possession of a firearm after having been committed to a mental institution. *Compl.* at 1. The original indictment of April 13, 2011 charged Mr. Spring with a different crime, an alleged violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2), making a false and fictitious statement in connection with the purchase of a firearm. *Indictment* at 1. The May 18, 2011 superseding indictment re-charged Mr. Spring with possession of a firearm after having been committed to a mental institution under 18 U.S.C. § 924(a)(1)(A), the same charge found in the criminal complaint. *Superseding Indictment* at 2. The facts in this case fit squarely within *Davis* and the Court applies its teaching.

Section 3161(b) of title 18 provides:

> Any . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested . . . in connection with such charges.

18 U.S.C. § 3161(b). Thirty days from February 23, 2011 was March 25, 2011, the date that an indictment had to be filed under the Speedy Trial Act. The Act expressly exempts certain specified periods of time from counting. *See* 18 U.S.C. § 3161 *et. seq.* Here, the parties agree that because Mr. Spring was arrested in Massachusetts and not brought into the custody of the District of Maine until

12

March 10, 2011, this interval is excluded under § 3161(h)(1)(E) and (F). This starts the speedy trial clock counting as of March 10, 2011, with the thirty day period expiring on April 8, 2011.

On March 17, 2011, the Court issued an Order excluding the period from March 15, 2011 until April 14, 2011. Five days lapsed before the March 17, 2011 Order was issued. As of April 14, 2011, the Government had twenty-five days to issue an indictment, until May 8, 2011.

On May 5, 2011, the Government moved for an order requiring disclosure of health information. *Mot. of the United States for an Order Requiring Disclosure of Health Information for a Law Enforcement Purpose* (Docket # 47). The Court acted on this motion on May 18, 2011 (Docket # 55), the same day the grand jury issued the superseding indictment (Docket # 57). If the motion for an order requiring disclosure is the type of motion that tolls the running of the speedy trial clock, the superseding indictment was timely. If the motion is not, the superseding indictment was issued too late.

The applicable exclusion provides:

(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed . . .:

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(D). Mr. Spring says that the Government's motion for an order requiring disclosure is not necessarily the type of motion that tolls the running of the thirty-day speedy trial clock between complaint and indictment.

13

*Def.'s Speedy Trial and Multiplicity Mot.* at 5-9. He points out that the plain language of the statute makes it clear that it is not the filing of a pretrial motion that tolls the speedy trial clock, but rather the delay occasioned by the filing of such a motion. *Id.* at 6. Mr. Spring argues that when a pretrial motion is filed between indictment and trial, the resolution of the motion commonly delays the scheduling of trial; however, when a pretrial motion is filed on an existing indictment, unless the motion is directly related to the charge later brought in the superseding indictment, the pendency of a pretrial motion does not affect the Government's ability to present new charges to a grand jury.

The problem with Mr. Spring's argument is that it is flatly contrary to the Supreme Court's decision in *United States v. Tinklenberg*, 131 S. Ct. 2007 (2011). In *Tinklenberg*, the Supreme Court rejected the Sixth Circuit's view that the language of the statute imposes a causation requirement. *Id.* at 2016. The *Tinklenberg* Court "disagree[d] with the Sixth Circuit that the Act's exclusion requires a court to find that the event the exclusion specifically describes, here the filing of the pretrial motion, actually caused or was expected to cause delay of a trial," holding that "the Act contains no such requirement." *Id.*

In fact, in *Bloate v. United States*, 130 S. Ct. 1345, 1349 n.1 (2010), the United States Supreme Court characterized the excludability of delay resulting from the filing of a pretrial motion as "'automatic' in the sense that a district court must exclude such delay from a Speedy Trial Act calculation without any further analysis as to whether the benefit of the delay outweighs its cost." *Id.* The *Bloate*

14

Court further explained that "[f]or delays resulting from proceedings under subsection (h)(1), Congress already has determined that the benefit of such delay outweighs its cost to a speedy trial, regardless of the specifics of the case." *Id.*

Faced with *Tinklenberg* and *Bloate*, Mr. Spring insists that the thirty-day period from arrest to indictment is different from the seventy-day period from indictment to trial. Mr. Spring makes some reasonable policy arguments for why Congress should have treated the thirty-day period differently from the seventy-day period. Nevertheless, his policy arguments draw no support from the language of the statute itself, which treats the two periods precisely the same:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> > (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to —
> >
> > (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(D). Even though the Court is sympathetic to Mr. Spring's view that it would be logical to treat the two periods differently for some motions that have a direct relevance to post-indictment proceedings, the statutory language simply does not do so.

Once the period from May 5, 2011 to May 18, 2011 is added to the other periods excluded under § 3161(h)(1)(D), the Court concludes that the superseding indictment was permissibly filed within thirty days of Mr. Spring's arrest.

C.  Multiplicity

Mr. Spring's last contention is that the counts I and II of the superseding indictment allege the same offense. He says that "Mr. Spring is charged twice with making the same false statement on the same form." *Def.'s Speedy Trial and Multiplicity Mot.* at 10. He summarizes that "a single false statement to obtain a single firearm on a single day constitutes a single unit of prosecution." *Id.* He insists that the Government "needs to pick one" charge, not two. *Id.*

He is wrong. The test for determining whether charges are multiplicitous is found in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). In *Blockburger*, the Supreme Court wrote that "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

It is true that 18 U.S.C. § 922(a)(6) and § 924(a)(1)(A) contain a number of common elements: 1) the mens rea standard is "knowingly" in both, 2) the statement has to have been made to a "federally licensed firearms dealer," and the statement must have been "false." However, § 922(a)(6) requires that the Government prove that the false statement was "intended or likely to deceive" the dealer; this statutory requirement is known as the materiality requirement. *United States v. Whitney*, 524 F.3d 134, 138 (1st Cir. 2008) (noting that the trial court had instructed the jury that the false statement must be "material" to the lawfulness of the sale). There is no similar materiality requirement in § 924(a)(1)(A). *United*

16

*States v. Sullivan*, 459 F.2d 993, 994 (8th Cir. 1972) ("While a violation of 18 U.S.C. § 922(a)(6) expressly requires a showing of materiality no such expression is found in § 924(a)."); *United States v. Waddell*, No. 97-10076, 1998 U.S. App. LEXIS 10402 at *1 (9th Cir. May 11, 1998).

Conversely, to establish a case under § 924(a)(1)(A), the Government must establish that the defendant made the false statement "with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter." 18 U.S.C. § 924(a)(1)(A). In § 922(a)(6), there is no requirement that the false statement be about information that the federally licensed dealer is required to retain in his records. Thus, § 924(a)(1)(A) requires proof of a fact that § 922(a)(6) does not.

Under *Blockburger*, the two counts are distinct and are not multiplicitous.

## III. CONCLUSION

The Court DENIES the Defendant's Motion to Dismiss the Superseding Indictment (Docket # 76) and the Defendant's Motion to Dismiss Count III of the Superseding Indictment for Speedy Trial Violation and to Dismiss Count II as Being Multiplicious (Docket # 77).

SO ORDERED.

/s/ John A. Woodcock, Jr.  
JOHN A. WOODCOCK, JR.  
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 12th day of September, 2011